UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTHONY LAMAR CORKER,

                Petitioner,           Case No. 2:21-cv-16

v.                                 Honorable Janet T. Neff

MIKE BROWN,

                Respondent.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Anthony Lamar Corker is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.  On May 7, 2018, Petitioner pleaded guilty in the Wayne County Circuit Court to charges in two criminal proceedings.  In Case No. 17-008550-1-FH, Petitioner pleaded guilty to first-degree home invasion.  In Case No. 17-008549-01-FH, Petitioner pleaded guilty to discharge of a firearm toward a building and use of a firearm during a felony, second offense.  On May 22, 2018, the court sentenced Petitioner to a prison term of 2 to 20 years for home invasion and a consecutive string of 5 years for felony-firearm followed by 1 year, 8 months to 10 years for discharge of a weapon toward a building.

        On January 11, 2021, Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

      I.      Ineffective assistance of counsel.  Mr. Corker should be allowed to withdraw his plea and proceed to trial again where his rights to counsel [were] violated when there was a breakdown in the attorney-client relationship to the extent he filed a grievance against counsel at the

beginning of his representation [and] made his concerns [known to the court] throughout the case.

II.  Judge abused his discretion.  The judge abused his discretion when I asked to have a different attorney due to breakdown between client [and] attorney.  Also [Petitioner] placed an attorney grievance against [his] attorney months before trial.  [Petitioner] wrote letters to the Judge and he refuse[d] me another attorney due to removing Mr. Rust during trial, Mr. Rust performed below standards and result[ed] in [Petitioner] forcingly taking a plea deal.

(Pet., ECF No. 1, PageID.5–7.)

Respondent has filed an answer to the petition (ECF No. 9) stating that habeas ground I is, in part, not cognizable on habeas review and, in the remainder, meritless, and that habeas ground II is simply meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are in part non-cognizable and in their entirety without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.  Factual allegations

Petitioner's convictions arose out of incidents at the home of his girlfriend.  The first incident occurred on July 27, 2017.[1]  Petitioner was invited to his girlfriend's house.  He arrived at about 11:00 p.m.  He was drunk.  Petitioner wanted to stay the night, she told him "no."  She told him to leave.  They tussled.  He hit her in the face.  She called her mother who, by way of the speaker phone, asked Petitioner to leave.  The girlfriend's mother told her to call the police; that angered Petitioner further.  He then pulled out a handgun and started shooting.  He fired the gun towards the wall—over the couch where the girlfriend's baby was sleeping— and then down into the floor.  Petitioner took the girlfriend's phone and her daughter's phone.

---

[1] The information regarding the incident is taken from the testimony of Petitioner's girlfriend offered on the second day of trial.  (Trial Tr. II, ECF No. 10-14.)

Eventually, he left.  The police recovered casings or slugs from the living room and the basement.

Based on that incident, in Wayne County Circuit Court Case No. 17-008549-01-FH, Petitioner was charged with discharge of a firearm in a building, being a felon in possession of a firearm, three counts of assault with a dangerous weapon, and felony-firearm second offense.

The next incident occurred on September 5, 2017.  Petitioner's girlfriend told him that Child Protective Services workers told her that she might lose the children if she permitted Petitioner into the home again.  Petitioner was outraged.  He called to say he was outside the house.  He invited her to come outside to talk.  She refused.

Petitioner then broke in through the kitchen window.  He was drunk.  He started grabbing at his girlfriend's clothes.  He partially disrobed her, he bent her over the kitchen sink, held her down, and penetrated her vaginally with his penis.  One of the girlfriend's daughters entered the kitchen and informed Petitioner that she had called the police.  Petitioner eventually left.

Based on that incident, in Wayne County Circuit Court Case No. 17-008550-01-FH, Petitioner was charged with first-degree home invasion, criminal sexual conduct-assault with intent to commit sexual penetration (CSC-Assault), and second-degree criminal sexual conduct (CSC-II).

Petitioner's cases were consolidated for trial.  (Pretrial Conf. Tr., ECF No. 10-5.)

Petitioner asked for substitute appointed counsel during the pretrial phase. (Pretrial Conf. Tr., ECF No. 10-6.)  He was dissatisfied with his initial appointed counsel—she invited inquiry into Petitioner's competence, and he did not like her answer to his question:  if

Petitioner were dating counsel, would counsel allow him around if he shot a handgun around her?  (Trial Tr. II, ECF No. 10-14, PageID.480–481.)

The trial court appointed substitute counsel.  Petitioner wrote letters to the trial court judge.  The judge declined to read them but provided copies to both counsel.  At a pretrial hearing, Petitioner raised concerns about his new counsel.  (Pretrial Conf. Tr., ECF No. 10-9, PageID.209.)  But he did not provide detail regarding his concerns and he did not seek substitute counsel.  Petitioner again raised concerns at the next pretrial conference.  (Pretrial Conf. Tr., ECF No. 10-10.)  Petitioner expressed to the trial court judge that he wanted his counsel to take certain actions.  Without getting into what Petitioner sought, counsel explained to the judge that, in his opinion, pursuing the course of action urged by Petitioner would "jeopardize Mr. Corker's position at trial."  (*Id*., PageID.242.)

At the final pretrial conference, Petitioner's counsel noted that Petitioner had filed a grievance against counsel.  (Pretrial Conf. Tr., ECF No. 10-12, PageID.262.)  Petitioner did not request substitute counsel and counsel did not ask permission to withdraw.

On the first day of trial, Petitioner reported that he had a breakdown in his relationship with counsel.  (Trial Tr. I, ECF No. 10-13, PageID.271.)  The judge permitted Petitioner to explain in detail after the jury had been selected.  Petitioner advised the judge that he had asked counsel to subpoena recorded conversations from the jail between Petitioner and the victim and the 911 calls.  As part of that exchange, Petitioner revealed that he had spoken to the victim using another detainee's ID number and that he had been ordered to have no contact with the victim.  The judge continued inquiry into the issue the next day, before the jury was sworn.

4

The judge read Petitioner's attorney grievance into the record.  The grievance included a list of the things that Petitioner wanted his counsel to do.  The judge then proceeded to read into the record portions of the correspondence that Petitioner had written to the court.  In his letters, Petitioner had pointed out inconsistencies in the victim's reporting of the incident and alleged inconsistencies between her account of the incidents and her behavior after each incident. After the court reviewed the grievance and the letters, Petitioner stated again that there was a breakdown in his relationship with counsel.  Petitioner explained that he would tell counsel what he wanted, but counsel would tell Petitioner "no" and why counsel did not think it appropriate. For example, Petitioner asked counsel to pursue a "directed verdict."  Counsel would not and expressed anger at Petitioner's suggestion.  Petitioner sent his counsel 133 pages of questions Petitioner wanted counsel to present during trial.

The trial judge pointed out that there was no forensic evidence in Petitioner's case and confirmed that counsel had reviewed the information that Petitioner had provided, including the jail telephone conversations.  The judge concluded that counsel had been attentive to Petitioner's interests, that counsel recognized that the case boiled down to the victim's credibility, and that Petitioner and counsel disagreed as to the best way to attack credibility.  But the judge also determined that the Petitioner and his counsel continued to communicate, that their disagreement did not involve a difference of fundamental trial tactics, and that it was simply too late into the trial process to permit such a garden-variety lawyer/client disagreement to delay the matter further with a substitution of counsel.

Counsel then asked the trial judge to recuse himself because he had reviewed the content of Petitioner's letters.  The judge denied Petitioner's motion.

After denying Petitioner's motions, the court gave the jury preliminary instructions.  The prosecutor gave an opening statement and then called the victim to the stand.

The victim's testimony was compelling.  The prosecution, anticipating the attacks on the victim's credibility that Petitioner had foretold in his *ex parte* letters to the court, robbed the expected attacks of much of their thunder by questioning the victim regarding her continued relationship with Petitioner after the July incident and communications with Petitioner after the September incident.  The victim testified that she spoke with Petitioner after the incident because his family and friends were threatening her.

Although much of the potentially discrediting effect had been effectively remedied on direct examination, Petitioner's counsel attacked the victim's credibility through cross-examination—not exactly as Petitioner had urged, but using many of the same lines of inquiry Petitioner had suggested.[2]  For example, counsel explored with the victim that he essentially lived with Petitioner, and that she continued the relationship with Petitioner even after the first incident.  Counsel got the victim to commit to a particular sequence of events when Petitioner came through the kitchen window on September 5, to permit exploration of varying accounts to police.  And counsel questioned why the victim continued to communicate with Petitioner by telephone even after the alleged sexual assault.  Ultimately, however, these lines of inquiry did not succeed as Petitioner had anticipated.

After the victim testified, court was adjourned for the day.  Over the intervening weekend, Petitioner apparently reconsidered the prosecution's plea offer—an offer he had

---

[2] The entirety of the exchange between the trial judge, Petitioner, and Petitioner's counsel regarding removal of counsel and substitution of new counsel appears at Trial Tr. II, ECF No. 10-14, PageID.448–489.  The judge's recounting of Petitioner's letters to the court are of particular interest in determining exactly what Petitioner wanted counsel to do and how counsel incorporated Petitioner's suggestions into his questioning of the victim.

rejected several times in the weeks preceding trial and even twice during trial.  The court proceeded with the plea colloquy and then accepted Petitioner's plea.

Two weeks later, the court sentenced Petitioner consistently with the plea agreement.  Petitioner contested whether the sentence imposed was consistent with the plea agreement; however, the court reviewed with Petitioner several times the terms of the agreement and how the sentence imposed matched the agreement.  Petitioner simply would not accept that characterization.  Yet Petitioner could not and did not explain how the sentence imposed was inconsistent with the agreement and his description of the term he agreed to was exactly the term imposed.

At sentencing, Petitioner indicated that he only took the plea because he was dissatisfied with counsel's questioning of the victim because counsel "didn't even ask [the victim] about the CSC or home invasion . . . ."  (Sentencing Tr., ECF No. 10-16, PageID.693.)  The court did not accept that explanation.  The court stated that Petitioner heard the complaining witness testify, recognized that he was about to get a significant sentence, and instead took the much shorter sentence called for by the plea offer.  (*Id*., PageID.695.)

Petitioner, with the assistance of counsel, filed applications for leave to appeal his judgments of conviction and sentence raising essentially the same issues he raises in his habeas petition.  The Michigan Court of Appeals denied leave for lack of merit in the grounds presented.  (Mich. Ct. App. Order, ECF No. 10-17, PageID.702, Mich. Ct. App. Order, ECF No. 10-18, PageID.1090.)  Petitioner then filed *pro per* applications for leave to appeal the judgments in the Michigan Supreme Court.  The supreme court denied leave initially (Mich. Order, ECF No. 10-19, PageID.1429) and upon reconsideration (Mich. Order, ECF No. 10-19, PageID.1428).  This timely petition followed.

## II.      AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).   An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."    28 U.S.C. § 2254(d).   "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001).  This presumption of correctness is accorded to findings of

state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    The validity of Petitioner's plea

Petitioner offers two grounds to support the habeas corpus challenge to his convictions; but he parsed those same grounds in different ways as he presented them to the Michigan appellate courts. In the court of appeals, Petitioner presented the grounds as one issue, and then argued it as four separate issues in his brief. In the supreme court, Petitioner presented the same arguments as four separate grounds for relief. The Court will consider Petitioner's two habeas grounds as three separate issues:  (A) the trial court should have permitted Petitioner to withdraw his plea; (B) the trial court should have permitted Petitioner to have substitute counsel; and (C) Petitioner's plea was rendered involuntary by counsel's ineffective assistance.

### A.      Plea withdrawal

Petitioner indicates that he should have been permitted to withdraw his plea.  He never moved for that relief in the trial court because it was too late to seek that relief when Petitioner's second appellate counsel was appointed.  He sought that relief, however, in the Michigan appellate courts.  The Michigan Court Rules identify several circumstances where a defendant should be permitted to withdraw his plea.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

To the extent Petitioner's claims are based on the state courts' failure to abide by the state's plea withdrawal guidelines, his claim is not cognizable on habeas review.  Indeed, the state court of appeals' determination that Petitioner's claim regarding plea withdrawal has no merit is binding on this Court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Moreover, there is no parallel federal constitutional right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a

11

knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794–95 (6th Cir. 1991).  Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea is not reviewable in habeas corpus.

### B.    Substitution of counsel

As trial began, Petitioner voiced his dissatisfaction with counsel and asked the trial court to appoint substitute counsel.  The trial court evaluated Petitioner's claims of dissatisfaction but concluded that Petitioner and his counsel were still communicating and simply disagreed about tactics—about how far to go in attacking the victim's credibility.  Because there was not a breakdown in communication between the two, because their disagreement was the common sort of disagreement that a defendant might have with appointed counsel, and because they were in the middle of trial, the trial court refused to appoint substitute counsel.

"In all criminal prosecutions," the Sixth Amendment says, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI. That includes the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quotation omitted).  Deprivation of the right is complete when a defendant is erroneously denied counsel of choice; he need not show prejudice or demonstrate that the counsel he received was ineffective.  *Id.* at 148. However, "the right to counsel of choice 'is circumscribed in several important respects.'"  *Id.* at 144 (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)).  One of those respects is that trial courts retain "wide latitude in balancing the right to counsel of choice against the needs of

fairness, and against the demands of its calendar." *Id.* at 152 (citation omitted).  Nevertheless, "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Recognizing this "wide latitude in balancing," *Gonzalez-Lopez*, 548 U.S. at 152, the Supreme Court has concluded that, to warrant a substitution of counsel during trial, the defendant "'must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with the attorney . . . .'" *United States v. Sullivan*, "431 F.3d 976, 979–80 (6th Cir. 2005) (quoting *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985)).  The Supreme Court has recognized that "courts addressing substitution motions in both capital and non-capital cases routinely consider issues of timeliness." *Martel v. Clair*, 565 U.S. 648, 662 (2012).  And, the Sixth Circuit, when reviewing a trial court's denial of a motion to substitute counsel, considers timeliness as one of four factors:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (quoting *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009)).

Although *Gonzalez-Lopez* focuses on the circumstances that might warrant a change, it does not foreclose the possibility that the decision will be dictated by scheduling concerns.  The Supreme Court acknowledged that *Gonalez-Lopez* "is not a case about a court's power to . . . make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Gonzalez-Lopez*, 548 U.S. at 152.  Petitioner has not and cannot cite any

13

Supreme Court authority holding that a trial court's discretionary denial of a request for new counsel on the day of trial violates Petitioner's constitutional right to counsel of his choice.[3]

When "'the granting of the defendant's request [to substitute counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'" *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir. 1995)).  The more general the rule, and the broader the discretion afforded to the trial court, "'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The trial court's exercise of its discretion to deny Petitioner's motion to substitute counsel was not unreasonable.  The trial court considered whether the circumstances identified in *Gonzalez-Lopez* that warrant a change were present.  Petitioner kept repeating that there was a breakdown in communication with counsel, but the court concluded that was not the case.  Although Petitioner and his counsel were in conflict, it was not the sort of conflict where they sought to proceed in two entirely different directions with Petitioner's defense.  Petitioner and counsel recognized that credibility of the victim was key.  They disagreed as to what things might convince a jury to question the victim's credibility.

Petitioner has not shown that the trial court's rejection of his motion was contrary to *Gonzalez-Lopez*.  Indeed, he cannot make that showing because the trial court's analysis tracks the approach the Supreme Court adopted.  Moreover, the court's factual determinations

---

[3] Indeed, the Sixth Circuit Court of Appeals has routinely indicated that the denial of such a motion on the day of trial is appropriate on timeliness grounds.  *See, e.g., Gilkey v. Burton*, No. 18-1760, 2019 WL 2970841, at *3 (6th Cir. Mar. 22, 2019); *McGhee v. MacLaren*, No. 17-1708, 2018 WL 3120798, at *2 (6th Cir. Jan. 19, 2018); *Mullins v. McKee*, No. 17-1845, 2018 WL 510134, at *2 (6th Cir. Jan. 3, 2018); *Nelson v. Jackson*, No. 16-2623, 2017 WL 5624278, at *3 (6th Cir. Jul. 17, 2017); *United States v. Jackson*, 662 F. App'x 416, 422–23 (6th Cir. 2016).

regarding potential conflicts of interest for counsel, breakdowns in communication, or irreconcilable conflicts between Petitioner and his counsel, are well-supported by the record. Accordingly, Petitioner is not entitled to habeas relief on his claim that the trial court should have permitted substitute counsel.

### C.      Ineffective assistance of counsel

A valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).  Petitioner's claim does not challenge the power of the state to bring him into court.  Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970).

To find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).   The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).

Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267–68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann*).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a

claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Petitioner contends his counsel rendered ineffective assistance because counsel would not do the things that Petitioner wanted him to do.[4]  Counsel did not request a private investigator, did not seek audio recordings of and records regarding telephone conversations from jail and otherwise to show the victim's conversations with Petitioner, did not pursue body cam and dash cam recordings from the police for a reason that is not entirely clear from Petitioner's argument, did not obtain the victim's text messages to show that the victim sent her mother pictures of the type of gun that the victim wanted, did not pursue forensic tests to show that protocol was not followed, and did not subpoena Petitioner's grandmother, mother, and cousin to testify that Petitioner was actually living with the victim on September 5 when he sexually assaulted her.  Counsel also did not explore discrepancies in the victim's preliminary examination testimony, inquire regarding her motivation to lie because of Child Protective Services, or develop the evidence that Petitioner had proof that the victim's ex-husband said he was going to shoot up her house.  Finally, Petitioner claims during cross-examination of the victim, counsel did not "ask her about the CSC or home invasion . . . not one time . . . ." (Sentencing Tr., ECF No. 10-16, PageID.693; Pet'r's Appeal Br., ECF No. 10-17, PageID.729.)

Petitioner's complaints are not premised on some claim that he "enter[ed] his plea upon the advice of counsel," *Hill*, 474 U.S. at 56, and that the advice was deficient.  Instead, Petitioner complains that his counsel's pre-plea ineffectiveness was so damaging to Petitioner's defense that Petitioner decided he should accept the plea offer.  For that reason, even though Petitioner's ineffective assistance claims are "pre-plea," he contends they impacted the voluntariness of his plea.

---

[4] Petitioner detailed the multiple failings of counsel in his letters to the trial court which were read into the record on the second day of trial.  He focused that list further in his brief on appeal.  (Pet'r's Appeal Br., ECF No. 10-17, PageID.726–727.)

Petitioner's argument highlights a tension in general statements of the law relating to this type of ineffective assistance claim.  On the one hand, claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267.  As the United States Supreme Court has explained,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett*, 411 U.S. at 267.  On the other hand, claims of pre-plea ineffective assistance of counsel are waived only if they do not relate to the voluntariness of the plea.  *See Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. Jul. 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001)).

Thus, the Court must assess whether Petitioner's allegations of ineffective assistance relate to the voluntariness of the plea.  If they relate to the plea, they survive the plea.  If they precede the plea and are unrelated to it, the plea "breaks the chain" between the alleged ineffective assistance and the result.

The Supreme Court provided guidance regarding this inquiry in its analysis of the prejudice for ineffective assistance of counsel claims in the guilty plea context.  The Court explained:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.  Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime

charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in *Strickland v. Washington, supra,* these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S., at 695.

*Hill*, 474 U.S. at 59. Essentially, therefore, counsel's pre-plea deficiencies might impact the voluntariness of a plea when they have some impact on the advice that counsel provides regarding the plea. If counsel did not adequately investigate, the advice he offers regarding potential defenses necessarily falls short. If counsel fails to advise or misadvises the defendant regarding affirmative defenses, the defendant cannot rationally weigh his options, as required for a voluntary plea. *See, e.g., Dando v. Yukins*, 461 F.3d 791 (6th Cir. 2006) (counsel's failure to investigate a duress defense and the related possibility that the defendant suffered from Battered Women's Syndrome rendered advice regarding plea objectively unreasonable).

But not every failure to investigate impacts the advice of counsel regarding a plea.[5] Petitioner offers nothing to suggest that counsel's failures rendered counsel's advice regarding the plea itself deficient. First, there is nothing in the record to indicate that counsel advised Petitioner to enter the plea. It is likely that counsel would have so advised Petitioner

---

[5] *See, e.g., Stiger*, 20 F. App'x at 308–09 ("Stiger's claims of ineffective assistance do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate but instead relate to earlier alleged constitutional deprivations."); *Rice*, 2016 WL 3877866, at *2 ("Rice argues that his counsel was ineffective for failing 'to investigate,' 'to subpoena witnesses,' 'to oppose adverse ruling to SCT,' 'to present evidence,' and 'to discover intimate evidence.' Because these alleged instances of ineffective assistance involved pre-plea matters, the district court denied relief on the basis of waiver by plea, and . . . reasonable jurist would agree."); *Tighe v. Gidley*, No. 17-1531, 2017 WL 5301481, at *3 (6th Cir. Oct. 25, 2017) ("Because Tighe's ineffective-assistance claim is based on trial counsel's failure to raise—prior to entry of the guilty plea—an involuntary intoxication defense that has been waived, it is derivatively meritless insofar as he fails to link the claim to the alleged involuntariness of the plea."); *Stoltz v. United States*, No. 19-5952, 2020 WL 885790, at *3 (6th Cir. Jan. 6, 2020) ("Stoltz contends that counsel performed ineffectively by failing to discover exculpatory evidence and failing to file a suppression motion. But a valid, unconditional guilty plea waives all 'constitutional violations occurring prior to a plea of guilty once the defendant enters [her] plea' unless expressly preserved in a plea agreement or at a plea hearing.").

because the sentence agreement was so beneficial to Petitioner, but the record does not suggest how counsel advised Petitioner one way or the other. Second, this is not a case where Petitioner was unaware of the evidence he now contends was beneficial to his defense, nor was it a case where counsel was unaware. Petitioner identified the evidence in his letters to the court. Thus, counsel's advice regarding the plea was not impacted by counsel's lack of knowledge regarding either the evidence or some defense it would have supported.

Because the pre-plea deficiencies alleged by Petitioner did not impact counsel's advice regarding the plea, under *Tollett* and *Hill*, those claims were waived by Petitioner's plea. Accordingly, Petitioner has failed to show that the court of appeals' rejection of his ineffective assistance claim—and the claim that Petitioner's plea was rendered involuntary by counsel's ineffective assistance—is contrary to, or an unreasonable application of clearly established federal law. Accordingly, he is not entitled to habeas relief on the ineffective assistance of counsel claims.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate

21

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:     October 15, 2021                                      /s/ *Maarten Vermaat*
                                                                           Maarten Vermaat
                                                                           United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections

22

and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).